Good morning. We are here having a zoom argument before myself, Chief Judge Wood and Judge Amy Barrett and Judge Scudder. Our first case for this morning is Democratic Party of Wisconsin against Vos, number 19-3138. And we are ready to hear from Mr. Levy. Thank you, Your Honor, and may it please the court. I'm here on behalf of the Democratic Party of Wisconsin and certain individual voters in Wisconsin. The case is a challenge to the lame duck laws that the Wisconsin legislature enacted in the wake of the 2018 election for state governor and attorney general in order to undermine the results of that election. When it became clear that the incumbent, Scott Walker, had lost the election for governor, the legislature and the lame duck governor pushed through laws that moved certain powers away from the governor and two committees of legislator. Our claim is that this is unconstitutional. Indeed, it is no different than if the legislature before the election had said that if Walker won, the powers of the governor would be unchanged. But if a challenger won office, the powers of the office would be diminished. Let me ask you this question, Mr. Levy. I think this case is a heavy lift for you. But suppose Wisconsin voters have simply decided at some point during the year that they wanted to have a statewide town hall type of government, such as we have in Vermont for localities. Maybe they decide, okay, modern world, we can do this statewide. We're not going to bother with an executive anymore. Why is that outside the authority of the people of the state of Wisconsin to do? So, so our claim, and I did want to get to the grounds for the district court decision, which is outstanding, but I did want to just frame the merits. Our claim is that this is unconstitutional because it was done in lame duck, and it was the legislature that was tasked with superintending the vote. And therefore, the legislature interfered with the exercise of the vote. What's wrong with the lame duck session, though? I mean, the state has set certain dates for elections and certain dates for swearing in. Is there something unconstitutional about a lame duck session? There's nothing per se unconstitutional about lame duck legislation. But when the legislation has the purpose and effect of interfering with the effectiveness of the vote, which was the case here, our argument on the merits is that this violates the Constitution. Of course, the district court here dismissed the case on standing grounds and did not even address any of the merits arguments. And so with the court's permission, I'd like to start there. The standing here and the court, our position is should remand to the district court for consideration of the merits, because the Democratic Party certainly has standing to make these voter suppression claims under Crawford and other cases of this court. Whether we prevail or not below is not really relevant. What matters is that the Democratic Party has alleged that these lame duck legislation have interfered with the Democratic Party. There's an unrebutted statement of the chair of the then chair of the Democratic Party saying that these acts have had this effect. Could I ask you, suppose somebody ran for governor on a platform of deregulation and the person had a vigorous campaign to that effect. That person wins the governorship on that ground. And then lo and behold, the COVID-19 crisis hits and the governor reconsiders and says, actually, no, we need a much stronger regulatory apparatus for public health. So I'm not going to do anything that I promised to do during my campaign. I'm going to do a 180 degree shift. Why isn't that just one of those things that happens in a democracy? Sometimes people don't keep their campaign promises, and I've never seen that as a constitutional violation. I don't know of any case that says it is. And I would agree with you, Your Honor, that that that that would be permissible. It's not our case. Our case is that by transferring powers after the election from one from the victors to bodies that were to act, not through legislation, but through executive action. The state legislature violated the Constitution. We're not challenging. We're not saying that the governor was bound to abide by his campaign promises. We're not saying that if this had been done after the inauguration, when the new legislature was there, subject to the veto of the new governor, that that would be a violation of the Constitution. We're saying that if it had been done before the election, if before the election, the legislature had said, if Mr. Evers wins, he will have diminished powers. But if Mr. Walker wins, he will not. That is a violation of the Constitution. What if the legislature, before the new governor takes office, says we are going to do everything we can to thwart his agenda and we will invoke whatever constitution exists, whatever procedure exists under the Wisconsin Constitution to impeach him. We will make sure that he doesn't get a single thing done. We will immobilize him. And then he's inaugurated. And lo and behold, they begin impeachment proceedings. Is there a vote dilution claim there for those who voted for Mr. Evers for governor? That's not our claim. And it's a different I'm not sure there would be a claim there. What we're saying here is that by by diminishing the powers of the office and having appointing them to somebody else, that's the violation. So in other words, if it had been done before, if the legislature had said that the committee that a committee of legislature would be in charge of litigation, then the voters in advance would know that and they would get to decide who among the candidates will will exercise the powers of the governor. And so there are certain things that a legislature cannot do during a lame duck session, not by virtue of the Wisconsin Constitution, but by virtue of the United States Constitution. Some kinds of legislation are just off limits. That is our claim. What if the same legislation had been passed, but by a Democratic legislature that just figured, you know, this is good governance. They don't make an announcement saying that it mattered that there was a governor of one party or another enacted and let's assume it's unified government and it's a Democrat coming in. But the voters voted assuming that the governor would have these powers but then the legislature change them, not for any announced partisan reason just because of its, its view on how things ought to be done. Again, that's not our claim. saying that but we have to explore the implications of it right so I'm talking the same legislation that transfers powers, but one that's not done with any announced partisan intent. I think if, if the purpose has nothing to do with undermining the vote or diluting the vote, then, then our, then I don't think our claim would prevail. But but again, the district court didn't even consider any of these points, the district court said that individual voters who were claiming that their vote was diluted, who had alleged under oath and under butted affidavits that they had expended time and resources to further their, their First Amendment rights had no standing. It's Judge Scott, let me ask you this question. And the reason I'm asking you this. And you know this sometimes standing can bleed into the aspects of the political question doctrine that your adversary raises here so suppose the case has proceeded all the way through discovery summary judgment, maybe a bench trial. What rule of law, if you had to put it in a sentence, would you be asking the district court to adopt to adjudicate the claim that you raise or claims that you raise? What's the legal rule? So we have three different claims. No, I know that if you just had to say, take, take. I think you start with your First Amendment claim. Set aside the guarantee clause for a second. What rule would you ask the court to adopt? So, following decisions of the Supreme Court like Anderson versus sailor breeze decisions of this court, like the Libertarian Party case, the rule would be if a state action unduly burdens, the exercise of the vote, and there's no vote neutral justification for it. It would be strict scrutiny, and then the action should be set aside, that would be the First Amendment claim for equal protection. I mean, this is an unusual way of thinking about vote dilution. Most of the voter dilution cases involve redistricting, packing and cracking, and all of those sorts of things. And you're saying that votes are diluted when the platform or the policies of the candidates are somehow thwarted between the date of the vote and the date when the newly elected individuals take office, whatever that office might be. I assume it's not limited to governor, it could be attorney general, it could be a state legislator of some type, it could be anybody that you vote for. And I'm having trouble finding some sort of limiting principle to that because policies are sometimes carried forward, sometimes they're not, sometimes maybe there is an effort to push through regulatory changes. We know as far back as Marbury v. Madison, sometimes there are efforts to nominate people and get them pushed into office. You know, we have a long and distinguished political history along this line. So what's the outer limit and what's your best constitutional ground for it? Is it if you had to pick the First Amendment, is it the Equal Protection Clause, is it the Guarantee Clause, what is it? So I think it's a combination of the Equal Protection Clause and the First Amendment, which the Supreme Court has viewed, collect together, including in cases like Williams v. Rhodes. The limiting principle, and just to be clear, it's not about thwarting the campaign promises. Of course, legislatures can act. Of course, the lame duck legislature doesn't lose all authority because it's in lame duck. The point is that it is about removing powers and authorities from one office. So it's effectively a pick and a poke election where you are. The voters think they are electing an attorney general or a and a an attorney and a governor who wields certain powers. And during lame duck, the legislature removes those powers and places them in the hands of a committee of legislators. I know that Mr. Zetlin says we should be out of court because we cannot articulate a rule of law that decides every case. But that's not how the Supreme Court has ruled on new issues of law. And this is in effect, they are using the novelty of this conduct. It's to our knowledge, been done once before in North Carolina and then here to say there's no decision squarely on point. And you can't articulate a rule that would that would govern all possible cases about what a what a legislature can do in a lame duck session. And therefore, you should be out of court. And that's not the law. The law, the law, the points that have been made and on which the district court ruled below are about standing about the political question doctrine. The court did not address the merits on the political question doctrine, if I can address that briefly, because the court addressed in the alternative. The Supreme Court has been very clear that the political question doctrine needs to be looked at on a case by case basis based on the facts and the specific circumstance of the case. The fact that we make a claim under the guarantee clause does not mean that we don't have a claim under the First Amendment or the Equal Protection Clause. Nor should the court determine that the guarantee clause is barred. Baker v. Carr makes that quite clear by remanding and holding that there is an equal protection claim, even in the absence of a guarantee clause claim. And the question under the political question doctrine is whether there is a separation of powers concerns that prohibits the federal courts from inquiring into a question that is inextricably intertwined with the case. And that is not the situation here. We have no issue that has been committed to the to the other branches of the government. The district court below, Sue Esponte, asked whether he should defer to the consideration of these issues by the state court under state law, presumably for reasons of federalism. And we filed a brief saying no. And my friend on the other side filed a brief saying no. So there is no federalism or 10th Amendment claim being made here. There's only a political question argument. And there is no separation of powers concern. There's no textual commitment of anything here to another branch. And there is no lack of a standard or lack of material that a court can apply. This is not a case where the court is asked whether it should recognize a foreign state or whether it's appropriate to launch a missile. That's the sort of issue that is frequently deemed out of bounds under the political question doctrine. I know Mr. Zetlin relies heavily on Rucho, which is a case about partisan gerrymandering. Our claim is not a partisan gerrymandering claim. I think the issue in in Rucho is this. The Supreme Court said that it is okay. And in fact, the framers anticipated that there would be some level of partisanship in the drawing of congressional district lines. And so the question for the claim that was before the Supreme Court was, at what point do we go from a permissible amount of partisanship, which is constitutional, into the area of an unconstitutional excessive partisanship? And that was only considered in terms of drawing district lines. And the court also looked at the elections clause, which invested Congress with the power to do that. But the court does, let me just interrupt for a second, what your opponents stress is the court in Rucho does also, for the majority, allude to the need for some kind of judicially applicable standards. Judges can't just sit there and flip coins or say, you know, here's a way, if I were running the world, I would run it. And the court is concerned about that in Rucho. Indeed, in its life and the cases that led up to Rucho as well. And I understand that. And this is not a case where there is an entire lack of judicial material. We have the text of the Constitution. We've cited cases, particularly in the First Amendment and the equal protection context, that we say are in point. My friend on the other side say that the cases are distinguishable. That'll be a merits question. But there is judicial material. And on the guarantee clause, I'll point to the 10th Circuit's decision in Kerr, which, you know, and of course, we admit there is dictum saying that all guarantee clause claims are not justiciable. But it has been limited by New York versus United States. And the court in Kerr said that we have to let the courts flesh out a standard. So I see that I have about four minutes left. I'd like to reserve some of my time for rebuttal unless the court has questions. I have a question, but I can say it. Well, let me ask you to think about it, okay? And then you can manage your rebuttal time effectively. The question I have is the last two pronouncements we have from the Supreme Court, we have Rucho, as we've been talking about, but then I think the term or two before we have Gill. And one of the things that concerns me about your position is the way the court talked about the claim of the retired University of Wisconsin professor, I think his name was William Whitford, there. And they talked about that in terms of standing. And so it's the combination of Rucho and I think that discussion in Gill that gives me some reservation about your position. So if you can spend a minute or so on that when you come back, that'd be great. I can address it now or I could do it later. Either way. However the court prefers. Why don't you wait and do it on your rebuttal? You may have more things. Thank you, Ronald. All right. Thank you very much. We will now hear from Mr. Siglin. Is that something close? That's exactly right, Your Honor. Misha Siglin for the legislative defendants. The Democratic Party of Wisconsin's lead claim here is that the state of Wisconsin no longer has a Republican form of government, because the legislature enacted a couple of laws that give it a co-equal seat at the table for certain policy decisions that impact our polity. This claim is legally foreclosed for at least three independently sufficient reasons. First, it clearly raises political questions as articulated by the Supreme Court in the Rucho decision. Can I ask you, Mr. Siglin, is it your view or that of your clients that any law that changes the structure of the government of a state is beyond federal constitutional control? Well, when we're talking about the political question, Dr., we're... So, in other words, take the hypothetical that your opponents raise or perhaps the hypothetical law that the legislature of Wisconsin, after Tony Evers wins the election, decides to pass a law saying, henceforth, all actions by the governor of Wisconsin will be subject to, will take effect only if ratified by a majority of the Wisconsin Senate. Just a simple one, not like a long one, the way these two statutes work. Would there be any problem with such a law? There would be no federal constitutional claim. In fact, a couple of months ago, this court in the Planned Farenthood v. Call case, in the second sentence of the opinion, said the state of Wisconsin, so far as the federal courts are concerned, could abolish the Attorney General's office. So, if we can abolish the Attorney General's office, so far as the federal courts are concerned, certainly we can do something like Your Honor has articulated. So, what if the law said instead that there will no longer be elections in the state of Wisconsin, there will be a dictator for life, you know, Susie Smith, I don't want to be personal about anybody, and that's the way we've decided to run ourselves. Any problem? Well, certainly, what Your Honor has raised there is the hypothetical that the First Circuit raised, what it held before Ruccio, that guarantee clause claims are not per se non-justiciable. I would say that that is in direct conflict with this court's decision in Risser. The way that I think Risser would handle it is that that is an issue for the political branches at the federal level to enforce the guarantee clause claims. The word never is something that sometimes makes me anxious in law, because if never really means never, then I think we can come up with hypotheticals. If never actually means very rare, then I would certainly agree with you that the thought of a state passing such a statute is not something that readily comes to mind. But what I am concerned with is maybe the converse of your arguments about your opponent. You say that there's no logical stopping point for his position where it becomes more difficult for policy preferences to be implemented. I don't see the stopping point with your position that the legislature can do virtually anything to favor Republicans over Democrats, to favor dictatorship over elected governance. Where is the limit? Your Honor, I think as the Supreme Court made clear on Ruccio, in order to decide whether that limit is judicially administrable, you need judicially manageable standards. Certainly, I think all would agree that a state-level dictator would be the kind of thing the guarantee clause is attempting to avoid. The question of whether enforcement of that clause is committed to the judiciary or to Congress and the President, that is what the political question doctrine is all about. I would certainly agree that if a state adopted a dictator, the Congress and the President have authority under the guarantee clause to do something about that. What about this? One thing that Mr. Levy has said is that the political question doctrine, which kind of bleeds over into this guarantee clause question, really is about the federal separation of powers. And so that all of your arguments about the political question doctrine are misplaced here. But let's imagine that the guarantee clause did have something to say on the merits about what the Wisconsin legislature did here. Is that the job of Congress and the President to do something about it, as you're positing in the dictatorship hypothetical? Well, what the Supreme Court held in Ruccio was even if assuming political gerrymandering is unconstitutional, and you see this discussion in the dissent, the courts, the federal courts, cannot, under the political question doctrine, adjudicate claims without judicially manageable standards. But Mr. Chase, the thing that concerns the majority in Ruccio is reconciling the fact that there's always some political dimension to something like district drawing. And how do you say how much is too much? And so I think we need to look at each question on its own. And I'm a little puzzled that the idea that we can't apply, let's say, rational basis equal protection scrutiny to certain distinctions is beyond the capability of courts. It doesn't mean people usually win rational basis tests. To the contrary, they don't. But no one has said that it's not justiciable just because it's a high bar. And I'm thinking of a statute saying, for example, Democrats will pay twice as much in state income tax as Republicans do, or something like that. Things disadvantage people because of their party affiliation. Surely that's a justiciable claim. Absolutely, Your Honor. And that what you just said there is exactly the hypothetical that Justice Kennedy raised in the Gil Woodford oral argument. And so, but notwithstanding that kind of hypothetical, when you have a facial discrimination in the statute, which I think would be strict scrutiny, when you have a neutral law and the only thing, facial neutral law, and the only thing you have an allegation of partisan intent, the Supreme Court and Ruccio made clear because partisanship is so all pervasive, you need judicially manageable standards. Consider the hypothetical that we raised a couple of times in this case, in which my friend on the other side really has no good answer for. Let's say after the 2016 election, Congress enacted a law, materially indistinguishable from the laws here, saying that in order for a wall on the southern border to be built, Congress has to have a seat at the table. My friend has not explained how a court would even go about beginning that inquiry. I thought he conceded in a footnote that your hypothetical was a good one. That was no better than what the Wisconsin legislature did, trying to strip the president of powers he otherwise would have. Certainly, I thought that that footnote had a lot of caveats and things of that sort. But I think that the key point about that hypothetical, other than the fact that it kind of puts light of the fact that this theory is kind of cognizable, is that it shows that there is no way to conduct these inquiries. Can you please clarify for me something you just said? I thought I heard you draw a distinction between a facial distinction between Republicans and Democrats on the basis of political party and something that is discernible only with additional evidence. Is that a distinction you're hanging your hat on, or is that just a question, again, of how hard is it to prove the case? I think that if a statute facially discriminated between Democrats and Republicans, that would trigger a different kind of scrutiny. I think the court, in its questioning in both Gill and Ruccio, made that very clear, I believe, when one of the counsel in Gill said that that kind of thing would not be judicially administrable. Even just Solito chimed in and said, what, facially discriminatory laws are not judicially administrable? So I think that's a different bucket entirely. What we have here is the claim that certain—as far as I understand their claim, is they think that a state legislature cannot take away too many powers with too much partisan intent at the wrong time. Each of those categories, I would submit, is not amenable to judicially administrable standards. With too many powers, how does one tell what's too many? How is one, three, four powers? They're a little more specific than that. They're focusing on particular powers, such as the power to compromise litigation that the attorney general had up until the time that these two statutes were passed. And so why don't we look at the actual parts of the statute they're attacking? You can look at it. And in fact, Your Honor just referenced a minute ago, well, why couldn't we apply rational basis review and things of that sort? We actually went through our brief in the trial court and before this court kind of breaking out the laws actually here into various categories and explaining why they're very rational. With regard to litigation provisions, they're exactly the kinds that Supreme Court of Bethune-Hill said a legislature should adopt to avoid the separation of powers problem of an attorney general or a governor giving away the constitutionality of state law as the governing attorney general tried to do here. And we went through those categories of laws, both in the trial court and here, and both times we were met with silence. They didn't explain why any of these categories of laws fail rational basis review. And they didn't even explain how they would imagine the case would be litigated. And so that is a real challenge for the defendant. I think you see a little hint of that in the Rule 26 submissions the party submitted. We didn't know what we should say on the proper subjects of discovery if this case were to go forward because we didn't know the elements of their claims. I think their claims involve some manner of partisan intent, but even that is indeterminate. For example, take my wall hypothetical. Is Congress in that circumstance enacting the wall law because it wants to politically harm President Trump's supporters? Or is it adopting that law because it thinks building a wall on the southern border is bad public policy? Those issues are just so intertwined, there's no judicially admissible way to do it in the context of this kind of claim. So let me stick with the wall for a minute. Suppose the statute you hypothesize is passed, and the President goes ahead and continues building the wall anyway. So maybe an affected landowner in Texas brings a lawsuit. I don't want to go off on a standing problem here. And the President defends on the basis that there is inherent power under Article II of the Constitution for him to take the actions he's taking to protect the southern border and so forth. You may be familiar with the statute called the Case Act, which governs virtually all international agreements the United States enters into. And sometimes they're legitimate because they're treaties, and sometimes they're legitimate because they're under authorizing legislation. But sometimes it's just raw, Article II means the President can do this. And any one of those is a possible way of doing things. So at least in your wall hypothetical, you'd have a way of adjudicating the ultimate Article II question. Well, Your Honor, the ultimate – the comparable question here would be whether the governor or the attorney general have certain inherent powers that this legislation stepped on. That argument is fully before the Wisconsin Supreme Court. I argued that case at the Wisconsin Supreme Court on October 21st. That decision is still pending. And the separation of powers under Wisconsin law are matters for the Wisconsin Supreme Court. It's an issue they took very seriously. And the decision is coming. We certainly hope we will prevail before the Associated Supreme Court. But that is yet to be determined. So essentially, if I could put words in your mouth, you're saying that whatever Wisconsin is doing with respect to separation of powers, aside from some of these extreme hypotheticals we can think of, is really up to Wisconsin, that the federal constitution doesn't tell it how to allocate powers among branches. That's exactly right, and that's what this court said in Risser, which also involved a kind of quirky aspect of the Wisconsin constitution about the governor's veto. This court said that is an issue, even though there was a claim that that made the governor very, very powerful in Wisconsin, that that was an issue for a Wisconsin constitution and Wisconsin state law. We don't want to go too far down the state road, but one of the things I did, I took a quick look at the North Carolina Supreme Court's opinion in Cooper v. Bergeron. That state Supreme Court was dealing with the same kind of issues, right? Whether transfer of power there violated state separation of powers principles, in particular, take care obligations that the governor had. That's right, Your Honor. The briefing in the Wisconsin Supreme Court is quite sophisticated. In that case, not only did the plaintiffs raise a bunch of these kind of arguments, the governor and the attorney general, even though they were defendants in that case, came in with arguments saying that these provisions, some of them, that's a category of the provisions here, violate the state separation of powers, state vesting clause, the executive power, the attorney general's power. Those issues were all briefed in the Wisconsin Supreme Court, and as I mentioned, those issues are pending before that court. That sounds to me like not something that's a justiciability problem. It may sound like something that may not state a federal claim or something along those lines, but if this is all teed up perfectly in the Wisconsin courts, why does that make it non-justiciable? Well, the questions of whether certain provisions violate the vesting clause in the Wisconsin Constitution, the attorney general's clause, those are judicial questions under the Wisconsin Constitution. Because there are legal standards, there's doctrine in the Wisconsin Supreme Court going many decades. The Martinez case is a landmark separation of powers case under the Wisconsin Constitution that the parties debated robustly what that meant in that Wisconsin Supreme Court. So it is not to say that every possible dispute with regard to these provisions is non-justiciable under every possible constitutional provision. It's that under the federal constitutional provisions of both here, counsel on the other side has not articulated judicially manageable standards for adjudicating those federal constitutional claims. And now just briefly on standing, since the district court did discuss that a good deal. Plinkett's theory of standing is as unprecedented as it is limitless. Their view is that whenever you have laws that are adopted that cause policy frustration for voters, not only do those voters have standing, but their political parties have standing. If they need to say, buck up their voters because they're too sad about the laws being enacted and they're less likely to come out, less likely to volunteer. Now that has, as we explained in our brief, three fundamental problems. First, it's plainly contrary to Gale where policy, which the Supreme Court held that policy frustration is not an Article III harm. It also has no limiting principle, as I think they come, my friend on the other side comes close to conceding on pages 21 through 22 of their brief. And third, as the district court said. Remember though that I also don't think you have one either. So if neither side has a limiting principle, we're in a quandary. Well, Your Honor, I do think that under the political question doctrine, a failure to articulate judicial manageable standards is as a basis for dismissal. And with regard to standing, they don't cite a single case in any court in this nation's history, recognizing a politicians we supported lost power, and therefore we are harmed theory of standing. I don't think this court reaffirming that principle under Gale and the cases that it cites would cause any problems for standing doctrine or limiting principles. Unless this court has any further questions, I would be glad to yield back the rest of my time. I see none, so thank you very much. And we will return then to Mr. Levy. And you have just a little under four minutes. You have, looks like, is that right? Do we have his time up? I can see I have three hours, three minutes and 49 seconds. Three minutes and 49 seconds. Looks like that's what you have. Okay, go ahead. Thank you, Your Honor. I'll start with standing and Judge Scudder's question about Gale. The issue in Gale was that the lead plaintiff, Mr. Whitford, lived in a district that continued after the action that was being challenged to favor Democrats. And he conceded that his ability to vote was not diluted in any way. The Supreme Court said that in light of that, and given that that was the only evidence of injury at trial, there was no plaintiff had standing. It did reaffirm, though, that the inquiry is different at different stages of the litigation. We are here on a motion to dismiss. There was some factual material that was put in in support of the premier injunction. And the allegation is that the vote for statewide office for governor and for attorney general was diluted, which means that all voters would have standing. And the other point, of course, is that separately, the Democratic Party of Wisconsin has standing under this court's decision in Crawford and the returning party of Illinois v. Schultz and the common cause case that we cite in our brief. And Gale doesn't change that. So, Mr. Levy, can I ask you, it seems to me that your theories, all of them, turn on whatever evidence you can come up with of some sort of naked partisan purpose in the Wisconsin legislature for the passage of these two statutes, Act 369 and 370. And, of course, it's not in the legislation itself. They don't say we are passing this legislation for the purpose of destroying the Democratic Party of Wisconsin. They're just, you know, there's other indirect evidence. Isn't it a little dangerous to go down that path? Because legislators say all sorts of things in the heat of the battle. I think this is an unusual case. And it's not just words, it's the context, the timing, and the specific acts that were targeted in light of the context of the campaign. So if we cite to the campaign, it's to, and to that extrinsic evidence, it is to make the point that this is a case involving facial and naked discriminatory purpose. So it falls squarely within the scope of what Mr. Zetlin said would be justiciable. I will add that on the preliminary injunction, we put in a factual statement of undisputed facts in support that had evidence and allegations establishing that element. It was unrebutted on the PI. And that's the record of the preliminary injunction, that there is unrebutted evidence that this was done for a naked partisan purpose that is discriminatory and that, in our view, violates the Constitution. So the court should remand to the district court for consideration of the merits because there is standing and there is no non-justiciable question presented. Unless the court has any further questions, I think I'll stop there. All right. I see none. So thank you to both counsel. We will take this case under advisement.